### STATE *v.* JOSEPH BUCKLEY.

It would be a serious obstruction to the administration of justice, if transcripts sent from one Court to another, sometimes loosely made up, could not be amended by the original records. The Courts have authority so to amend, in order to make such transcript conform to the original record.

Upon a trial of larceny, it is competent for the State to show the condition of the prosecutor at the time of the alleged larceny, and for sometime thereafter, in order to prove that he had been drugged, as well as the potent effects of the drug administered.

(*Upton's case*, 1 Dev. 513, and *State* v. *Jackson*, 65 N. C. Rep. 305, cited and approved.)

INDICTMENT FOR LARCENY, tried before *Schenck, J.*, at Fall Term, 1874, CABARRUS Superior Court.

The larceny was alleged to have been committed in an alley eading from the Charlotte hotel to a livery stable in the rear of the lot, at the end of an omnibus, which stood near a shed.

One Whitlock, keeper of the stables, testified that he was at the stable and saw the defendant Buckley, and Boyd from whom the money was stolen, coming down the alley arm in arm, early in the morning, also four other men whom he did not know, following close after them. Defendant said to Boyd, "Your name is Boyd and mine is Boyd, lets take a drink." Boyd then drank out of a bottle of Buckley's and very soon became "as limber as a dish-rag, and seemed to lose his senses." At that time Buckley, Boyd and the four men were at the step of the omnibus. One of the men, "a little Irishman," pre. tending to be very drunk, pulled out some cards and threw them down on the omnibus step, and all the men said to Boyd "bet, bet;" Boyd replied, "I never do bet," and refused to bet. Just then one of the party, witness could not say which as they were all close together, put his hand into Boyd's left hand pants pocket. Boyd clasped his hand on the pocket and said, "Don't take my money," but the man did take it.

Witness attracted by this conversation gave better attention and came nearer to them. The man with "white pants" had the money, and counted it out, $75.00, and handed it to one of the others, who immediately made off with it. They were all strangers, and witness had not seen them since.

As soon as the money was taken the party scattered and Buckley led the old man Boyd back to the stable. Boyd was complaining and Buckley said, "Hush, we'll fix those fellows." Witness followed to the hotel and found two of the men paying their bills and getting ready to leave.

Boyd was senseless and helpless and was lifted by the porter and put in a chair, from which he was lifted into an omnibus and carried to the depot. Witness had brought the four men from Monroe after Robinson's circus was there. Defendant came there from some other place. Witness described the money as "greenbacks," and no point was made as to the iden-

tity. One ten dollar bill was particularly described as a new bill. This occurred just before the northern train was to leave on the North Carolina Railroad.

Witness was asked by the Solicitor, "If he saw Boyd after this at the Mayor's office, and on the hearing of the *habeas corpus* a day or two afterwards, and what was his condition?" Defendant objected. The objection was overruled by the Court, and prisoner excepted. Witness then stated that he saw Boyd at the Mayor's office that day, and he was unable to testify. That he saw him two days afterwards at the court house; that he was " drowsy, stupid and talked like he was not in his right mind, but was better than when at the Mayor's office.

Prisoner requested the Court, among other things, to charge the jury, " that if it was the purpose of the defendant to induce Boyd to bet the money at cards, then in such case he is not guilty of larceny."

Prisoner further requested the Court to instruct the jury, " That to constitute larceny the felonious taking must be done fraudulently and secretly so as not only to deprive Boyd of his property, but also to leave him without knowledge of the taker.

His Honor refused the specific instruction asked for and charged the jury that no intention with which the taking was done, had been fairly left to the jury. As to the second charge asked for, his Honor declined to give it in that language on the ground that the word "secretly" might mislead them, but charged "that larceny might be committed without secrecy in one sense, as in Henderson's case, or it might be done in daylight or in a crowd, that it must however be fraudulently done, that this was indispensable to the commission of larceny. That the leading idea in larceny was an attempt to evade the law."

The jury rendered a verdict of guilty. There was a motion for a new trial—motion overruled.

Motion in arrest of judgment because the seal of the Court was not attached.

Motion was overruled, judgment pronounced, and the prisoner appealed.

*Wilson & Son*, for the prisoner.
*Attorney General Hargrove*, for the State.

SETTLE, J. We answer the objection of the defendant to the amendment of the record, in the language of this Court in *State* v. *Upton*, 1 Dev., 513. "It would be a serious obstruction to the administration of justice if transcripts sent from one Court to another, sometimes loosely made up, could not be amended by the original record. It is every day practice to do so, and it is consistent with principle." Of course it can make no difference at what time during the term the amendment is made.

The defendant has no just ground of complaint either to the charge or the rulings of his Honor.

In *Jackson's case*, 45 N. C., 305, the defendant took advantage of the drunken condition of the prosecutor to abstract his money from his person. Here the defendant first administered drugged liquor, which had the effect almost immediately to make the prosecutor, in the language of the witness, "as limber as a dish-rag," and then took his money.

We think it was clearly competent to show the condition of the prosecutor for sometime thereafter, to establish :

1. The fact that he had been drugged.

2. To show the potency of the drug administered.

The record states that no point was made as to the identity of the money, and indeed it would have been useless to have made the point after the voluntary confession of the defendant to the officer that he had taken the prosecutor's money, and would return it rather than go to jail.

There is no error. This will be certified, &c.

PER CURIAM. Judgment affirmed.